**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

-------------------------------------------------------------------X

JOHN DOE,

                      Plaintiff,

                  -against-

BUTLER UNIVERSITY,

                    Defendant.

      Civil Action No: 1:22-cv-01828

-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN RESPONSE TO DEFENDANT'S**
**OPPOSITION AND IN FURTHER SUPPORT OF PLAINTIFF'S MOTION**
**<u>TO PROCEED UNDER A PSEUDONYM</u>**

## TABLE OF CONTENTS

UNITED STATES DISTRICT COURT ...................................................................... 1

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ............................................................................................ 1

ARGUMENT ................................................................................................................. 5

   **I.**    **LEGAL STANDARD** ...................................................................................... 5

   **II.**    **PLAINTIFF SUFFICIENTLY ALLEGES BREACH OF CONTRACT** ................. 6

     **a)**  **Plaintiff Points to Sufficiently Specific Policy Provisions** .......................... 7

     **b)**  **Plaintiff Has Pled All Necessary Elements of a Breach of Contract Claim** ........... 14

   **III.**   **PLAINTIFF SUFFICIENTLY PLEADS UNJUST ENRICHMENT IN THE ALTERNATIVE** .............................................................................................. 15

   **IV.**   **THERE IS NO BASIS TO DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE** ................................................................................................. 16

CONCLUSION ........................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Allahverdi v. Regents of University of New Mexico,*
   2006 WL 131380 (D.N.M. Apr. 25, 2006) ........................................................... 14

*Arista Records, LLC v. Doe 3,*
   604 F.3d 110 (2d Cir. 2010) ................................................................................. 6

*Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n,*
   377 F.3d 682 (7th Cir.2004) ................................................................................ 17

*Bell Atl. v. Twombly,*
   550 U.S. 544 (2007) ....................................................................................... 5, 6

*Brooks v. Ross,*
   578 F.3d 574 (7th Cir. 2009) ................................................................................ 5

*Carroll v. Morrison Hotel Corp.,*
   149 F.2d 404 (7th Cir. 1945 ............................................................................... 6

*Castelino v. Rose-Hulman Inst. of Tech.,*
   999 F.3d 1031 (7th Cir. 2021) ........................................................................... 15

*Deppe v. Nat'l Collegiate Athletic Ass'n,*
   No. 1:16-CV-00528(TWP)(DKL), 2017 WL 897307 (S.D. Ind. Mar. 6, 2017) ...... 5

*Doe v. Baum,*
   903 F.3d 575 (6th Cir. 2018) .............................................................................. 14

*Doe v. Columbia Univ.,*
   831 F.3d 46 (2d Cir. 2016) ................................................................................... 5

*Doe v. Purdue Univ.,*
   928 F.3d 652 (7th Cir. 2019) ............................................................................... 9

*Doe v. Univ. of Denver,*

2022 COA 57, ¶¶ 40-55 P.3d 946, 956 ................................................................ 12

*Doe v. Univ. of Scis.*,
   961 F.3d 203 (3d Cir. 2020) .................................................................... 12, 14

*Erickson v. Pardus*,
   551 U.S. 89 (2007) .......................................................................................... 5

*Foster v. DeLuca*,
   545 F.3d 582 (7th Cir.2008). ........................................................................ 17

*Franklin v. Civ. City of S. Bend*,
   No. 3:13-CV-207-TLS, 2013 WL 5308860 (N.D. Ind. Sept. 19, 2013) ................ 17

*Gordon v. Purdue Univ.*,
   862 N.E.2d 1244 (Ind. Ct. App. 2007) .............................................................. 7

*Hedges v. United States*,
   404 F.3d 744 (3d Cir. 2005) ............................................................................ 5

*Holman v. Indiana*,
   211 F.3d 399 (7th Cir. 2000) ......................................................................... 16

*In re Bridgestone/Firestone Inc. Tires Prod. Liab. Litig.*,
   205 F.R.D. 503 (S.D. Ind. 2001) .................................................................... 16

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*,
   155 F. Supp. 2d 1069, 1116 (S.D. Ind.) ........................................................ 16

*Lincoln Ben. Life Co. v. AEI Life, LLC*,
   800 F.3d 99, 107 n.31 (3d Cir. 2015) ............................................................... 6

*Marcure v. Lynn*,
   992 F.3d 625 (7th Cir. 2021 .......................................................................... 5

*McGhee v. Tyson Fresh Meats*,
   No. 3:12 CV 158, 2014 WL 346002 (N.D. Ind. Jan. 30, 2014) ........................... 5

*Neurology & Pain Mgmt. Assocs., P.C. v. Bunin*,
   No. 3:17-CV-035 JD, 2018 WL 3830059 (N.D. Ind. Aug. 13, 2018) ................. 14

*Ross v. Creighton Univ.*,
   957 F.2d 410 (7th Cir. 1992) .......................................................................... 7

*Tamayo v. Blagojevich*,
   526 F.3d 1074 (7th Cir. 2008) ........................................................................ 5

**Rules**

Fed.R.Civ.P. 8(a) ............................................................................................ 5
Fed.R.Civ.P. 12(b)(6) .......................................................................... 5, 7, 10, 15
Fed.R.Civ.P. 15(a)(2) ..................................................................................... 17

## PRELIMINARY STATEMENT

Plaintiff John Doe hereby submits this memorandum of law in opposition to the Motion to Dismiss Plaintiff's Complaint (ECF No. 22, hereinafter "Moving Br.") filed by Defendant Butler University ("Butler" or "the University"). As set forth in detail in Plaintiff's Complaint, Butler subjected Plaintiff to a procedurally flawed and fundamentally unfair disciplinary process that violated Defendant's contractual obligations to Plaintiff and resulted in unjust enrichment to the University.

Defendant intentionally ignores or misrepresents several key portions of the of the Complaint providing material context and factual detail, instead cherry-picking allegations in isolation from the totality of the Complaint and then arguing such allegations are insufficient on their own to state a claim. Such a tactic is unavailing at this stage in the litigation. The Complaint, and the facts alleged therein, taken as a whole and viewed in the light most favorable to Plaintiff, as they must be, sufficiently set forth factual allegations providing a plausible basis for the causes of action alleged. That is all the law requires at this stage in the litigation.

Based on the allegations contained in the Complaint, which are presumed to be true for the purposes of a Rule 12(b)(6) motion, Plaintiff has adequately pleaded breach of contract and unjust enrichment claims. Defendant's motion should be denied.

## STATEMENT OF FACTS

The complete facts underlying this action are set forth fully in the Complaint (ECF No. 1), incorporated herein by reference. For the Court's convenience, a summary of the relevant facts follows.

Plaintiff matriculated to Butler in the fall of 2019 and began to have issues with his friend group after he came out as gay in the fall of 2020. Compl. ¶¶ 21-28. Plaintiff was a member of a fraternity at the time and felt that the environment became hostile after he came out as gay, so he began to spend more time in a dorm suite ("Room 113") that was shared by five members of his friend group, including fellow classmate, J.F. Compl. ¶ 28. Room 113 was the "de facto" hang out spot for Plaintiff's friend group, and nonresident members, including Plaintiff, often spent time in Room 113, and were not instructed to leave. Compl. ¶ 29. In the fall of 2020, Plaintiff and another friend, B.P., watched the presidential election along with other residents of Room 113. When it became clear that Plaintiff did not hold the same political views as the residents of Room 113, Plaintiff was called "annoying." Compl. ¶ 32. Additionally, J.F. claimed that Plaintiff often sent TikToks of "sappy friend things," which J.F. and the friend group also found bothersome. Compl. ¶ 33.

On or about November 5, 2020, the residents of Room 113 decided to confront Plaintiff about his frequent presence in the suite, and expressed frustration that Room 113 was always the hangout spot for Plaintiff and B.P. Compl. ¶ 34. During this discussion, Plaintiff apologized if he made any member of the friend group uncomfortable, and the friend group assured Plaintiff that they were still friends. Compl. ¶ 35. From that point on, until 2021, there were no issues within the friend group. Compl. ¶¶ 36-44.

On or about February 26, 2021, Plaintiff, B.P., and another friend, S.B., went to hang out in Room 113. That night Plaintiff used J.F.'s bathroom, as he had done before while in Room 113 with no issue. However, this time, Plaintiff's use of the bathroom upset J.F. and caused J.F. to confront Plaintiff in a lengthy group message. Compl. ¶¶ 47-59. Plaintiff profusely apologized if

he did anything to upset J.F., however, his apology was not accepted, and members of the group began to spread lies about Plaintiff. *Id.*

Several days later, J.F. asked Plaintiff to meet her in a building on campus, where he was ambushed by the rest of the Room 113 residents, S.B., B.P., Plaintiff's resident advisor, and J.F.'s resident advisor. Compl. ¶ 59. This meeting, which was framed as a "mediation," essentially turned into a group bullying session, supported by the resident advisors, wherein all of the participants ganged up on Plaintiff to tell him everything they did not like or found annoying about him, culminating with their decision to oust him from the friend group. Compl. ¶¶ 60-65. After March 1, 2021, Plaintiff made no further contact to anyone in the friend group. Compl. ¶ 66.

On or around March 9, 2021, Plaintiff, while in his private room, told his mother over the phone about everything that occurred, stating that it seemed like J.F. had turned the friend group against him, and that he felt betrayed by B.P. Compl. ¶ 68. B.P., who was apparently eavesdropping on Plaintiff's conversation, then stormed in, angry, threatening Plaintiff by stating she "didn't want to make this any harder" on Plaintiff than it already was. Compl. ¶ 69. That same day, J.F. filed a formal complaint against Plaintiff for stalking under the Sexual Misconduct Policy (hereinafter, "the SMP" or "the Policy"). Compl. ¶ 76. J.F.'s primary complaint was that Plaintiff had used her bathroom once without express, advance permission. Compl. ¶ 80.  Notably, J.F. did *not* allege that Plaintiff damaged her bathroom or stole or damaged any of her belongings; it was exclusively the fact that Plaintiff used her bathroom that J.F. claimed sent her into a state of emotional devastation.  Compl. ¶¶ 7, 61, 81.

Despite the fact that J.F.'s complaint – which again, was centrally that a male student used her bathroom - did not fall under the SMP's definition of Stalking, the University commenced a

sloppy, one-sided investigation wherein Plaintiff's harassment and victimization by J.F. and others in the group was completely tossed to the wayside. Compl. ¶¶ 77-88.

Without giving Plaintiff a meaningful opportunity to review the evidence gathered in the investigation, the University unilaterally scheduled a hearing to resolve the Stalking claim on a date for which Plaintiff was not available.   Compl. ¶¶ 88-95.   The University rescheduled the hearing, which was then unilaterally cancelled by the University a mere 90-minutes before it was scheduled to begin — after Plaintiff had already traveled, by plane, to attend. Compl. ¶¶ 95-101. Eventually, the hearing was rescheduled again, without consulting Plaintiff as to his availability, and on October 13, 2021, the hearing was held with no investigator present and the investigation report was not disclosed to the decision-maker. Compl. ¶¶ 112-115. Accordingly, Plaintiff had no opportunity to question the investigator, as promised by the SMP. *Id.* On October 29, 2021, the University issued a decision letter rightly finding Plaintiff not responsible for Stalking under the SMP, largely based on the fact that complainant's *own admissions* essentially precluded a finding of Stalking under the policy definition. Compl. ¶ 117. Although Plaintiff was ultimately found not responsible, Plaintiff was still subjected to considerable mental and emotional distress (and expended substantial sums of money hiring an advisor and law firm to help him through the process) from having to go through the drawn out, unfair, improper investigation process, which could and should have been dismissed well before the hearing. Compl. ¶ 119. Additionally, to date, the University has taken no action against J.F. or B.P. for their demonstrably, intentionally false claims throughout the investigation, and thus has taken no steps to remedy the hostile environment that Plaintiff continues to be subjected to. Compl. ¶ 120.

As a result, Plaintiff has suffered, and will continue to suffer significant damages as a result of Defendant's unlawful actions. Compl. ¶¶ 142-144.

## ARGUMENT

### I.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires simply that a Complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Under the liberal federal pleading rules, a plaintiff does not need to plead his evidence; rather, a Complaint need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *McGhee v. Tyson Fresh Meats*, No. 3:12 CV 158, 2014 WL 346002, at *1 (N.D. Ind. Jan. 30, 2014) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). Notice-pleading "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009*)* (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 556 (2007)).

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the moving party bears the burden of showing that no claim has been stated. *Marcure v. Lynn,* 992 F.3d 625, 630 (7th Cir. 2021). In reviewing the motion, the district court must accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008); *see also Deppe v. Nat'l Collegiate Athletic Ass'n*, No. 1:16-CV-00528(TWP)(DKL), 2017 WL 897307, at *1 (S.D. Ind. Mar. 6, 2017), *aff'd*, 893 F.3d 498 (7th Cir. 2018). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." *Brooks v. Ross,* 578 F.3d at 581 (quoting *Bell Atl. v. Twombly*, 550 U.S. at 556*).* Even where "the facts a plaintiff alleges in a complaint may turn out to be self-serving and untrue," a court at the motion-to-dismiss stage "is not engaged in an effort to determine the true facts." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016). "If the complaint is found sufficient to state a legal claim, the opposing party will then have ample opportunity to contest the

truth of the plaintiff's allegations and to offer its own version" through discovery and substantive litigation. *Ibid.*

Moreover, the *Twombly* pleading standard does not prevent a plaintiff from pleading facts alleged upon information and belief. *See Carroll v. Morrison Hotel Corp.,* 149 F.2d 404, 406 (7th Cir. 1945). Thus, the mandatory presumption of truth and the beneficial inference in favor of the Plaintiff apply not only to facts based on direct personal knowledge, but also those alleged on "information and belief." *Id.* ("On a motion to dismiss on the ground that the complaint does not state a claim on which relief can be granted, the rule is that the complaint must be viewed in the light most favorable to plaintiff and the truth of all facts well pleaded, admitted. This includes facts alleged on information and belief."); *see also Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 107 n.31 (3d Cir. 2015) (denying motion to dismiss and noting that the Ninth, Seventh, and Second Circuit all presume truth of "information and belief" allegations).

## II.   <u>PLAINTIFF SUFFICIENTLY ALLEGES BREACH OF CONTRACT</u>

Plaintiff's Complaint sufficiently sets forth a claim for breach of contract against Butler. Plaintiff points out numerous, specific provisions of the Sexual Misconduct Policy that Butler failed to abide by, resulting in damages to Plaintiff. Defendant acknowledges that it had a contractual relationship with Doe, and that the Policy set forth Butler's obligations to Plaintiff but claims that (i) the terms identified by Plaintiff are insufficiently specific to merit enforcement, or (ii) Plaintiff fails to plead bad faith as part of his breach of contract claim. Although generally speaking, reliance solely on generic aspirational statements in a handbook does not ground a contract claim, Butler fails to appreciate that Plaintiff alleges *specific* provisions that were violated, and Butler's "no breach" claims are baseless – and in any case, the argument that Butler did not breach the contract is goes to the merits of the case, not the sufficiency of the pleading, which is

all that is at issue on a Rule 12(b)(6) motion. Moreover, the cases relied upon by Butler are clearly distinguishable. The motion to dismiss Plaintiff's contract claims should be dismissed.

### a) Plaintiff Points to Sufficiently Specific Policy Provisions

Indiana courts have routinely held that the relationship between a student and a university is contractual in nature and the terms of the contract stem from, *inter alia*, the school's handbook and relevant policies. *See Ross v. Creighton Univ.,* 957 F.2d 410, 416 (7th Cir. 1992) ("The catalogues, bulletins, circulars, and regulations of the institution made available to the matriculant become a part of the contract."); *Gordon v. Purdue Univ.,* 862 N.E.2d 1244, 1251 (Ind. Ct. App. 2007) ("the relationship between a student and an educational institution is contractual in nature.").

As set forth in the Complaint, through the course of the disciplinary process, Butler breached, *inter alia*, the following specific, non-aspirational, mandatory Policy provisions:

(i)     Butler defines stalking as

> Stalking occurs when a person engages in a course of conduct directed at a specific person under circumstances that would cause a reasonable person to fear for the person's safety or the safety of others or to experience substantial emotional distress.
> 1. "Course of conduct" means two or more acts, including but not limited to acts in which a person directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about another person, or interferes with another person's property.
> 2. Substantial emotional distress means significant mental suffering or anguish.
>
> Compl. ¶¶126-127.

(ii)    Parties to an investigation will be given access to "[a]n appendix containing raw materials gathered in the investigation (e.g., incident reports, documentation submitted by the parties, etc.)." Compl. ¶ 133.

(iii)    "The Title IX Coordinator will send notice of the date, time, and location of the hearing, as well as the name(s) of the decision-maker(s) to the parties at least fourteen (14) business days prior to the hearing date." Compl. ¶ 134.

(iv)    "In scheduling the hearing, the Title IX Coordinator will accommodate the parties' and advisors' schedules to the extent reasonable." Compl. ¶ 135.

(v)    "The decision-maker will be provided a copy of the Final Investigation Report." Compl. ¶ 136.

(vi)    "Each party's advisor may question the other party, witnesses, and investigator on behalf of their advisee." Compl. ¶ 137.

These allegations are sufficiently specific and non-discretionary to ground a breach of contract claim. Notably, while Defendant spends pages harping on a handful of supposedly "aspirational" promises, Defendant, in an attempt to mislead the Court, *intentionally leaves out numerous specific, concrete SMP provisions identified within the Complaint*, presumably because these provisions are more than sufficient to sustain a breach of contract claim. Specifically, Defendant's brief makes *no mention* of paragraphs 134, 135, 136, or 137 of the Complaint (and only the most passing, vague reference to paragraph 133) thereby ignoring the specific provisions which Butler blatantly disregarded and/or breached throughout the course of Plaintiff's disciplinary proceeding.

With regard to Butler improperly pursuing an investigation and hearing against Plaintiff for stalking, Butler breached the SMP because the allegations that J.F. brought to the University, even if true, could not sustain a complaint for stalking under the SMP. Not once did J.F. claim that Plaintiff's alleged actions were directed towards her, nor did she allege *any* action by Plaintiff that would cause a reasonable person to fear for their safety. Compl. ¶ 110.   Butler therefore breached

the SMP by failing to properly apply the SMP definition of stalking and continuing to press forward in a lengthy, damaging disciplinary process for conduct which, *by complainant's own admissions*, could not constitute stalking under the SMP. Compl. ¶¶ 12, 109-112, 118.  Moreover, Butler acted arbitrarily and in bad faith by commencing, continuing, and expanding its investigation because, as demonstrated, Plaintiff's alleged conduct did not, in any manner, fall under the SMP definition of stalking.  Butler's assertion in its Moving Brief that this Policy provision does not constitute a "promise" to properly screen student complaints (Moving Br. at 16), is disingenuous and illogical.  By expressly and specifically defining certain conduct and assigning a specific process to address such defined conduct, Butler is inherently promising that conduct which does *not* meet this definition will *not* be the basis of a formal investigation and hearing process designed to resolve only these specific violations.

Butler's Moving Brief also neglects to substantively address its failure to provide Plaintiff with an appendix of raw materials gathered in the investigation, other than a passing conclusory reference in a single bullet point. (Moving Br. 15). With regard to the provision of the SMP promising to provide respondents with access to the investigation's "raw materials," Plaintiff only received a sloppy, overly-redacted appendix which was so inscrutable as to constitute denial of access entirely. The appendix provided to Plaintiff entirely redacted *all* names, leaving not even an initial or pseudonym (such as "student 1"), making it impossible to make out a coherent narrative within the materials. Compl. ¶¶ 88(b)-(f), 130(a), 133(a), 150(b). Butler's specific, express promise to provide respondents access to the investigative materials must, of course, be *meaningful* access. The University cannot skirt its contractual obligations by merely providing the *appearance* of an opportunity to review the materials. *See, e.g., Doe v. Purdue Univ.*, 928 F.3d 652, 663 (7th Cir. 2019) ("a hearing must be a real one, not a sham or pretense.").

Butler appears to argue, by way of one bullet point within its brief, that it could have provided Plaintiff with 100 pages of *entirely* redacted content, and yet still been in compliance with the contractual promise to provide access to the "raw materials" of the investigation because there was no express promise that the materials would *not* be redacted. (Moving Br. 15). Such an absurd claim should not be given credence, especially on a Rule 12(b)(6) motion to dismiss. Moreover, with regard to Butler's conduct being arbitrary, capricious, or in bad faith, the Complaint specifically alleges that Plaintiff *repeatedly* asked Butler to provide access to the unredacted materials on the grounds that the report was inscrutable, and that Butler refused to provide access *and* refused to even create a version of the report where the redactions were replaced with suitable pseudonyms. Compl. ¶ 88(d). Given that Butler had no legitimate basis upon which to refuse to create a report that Plaintiff could actually understand, such conduct is undoubtedly arbitrary, capricious, and bad faith.

With regard to paragraphs 134-135 of the Complaint, Plaintiff adequately alleges the University's failure to (i) provide Plaintiff with proper notice of the hearing, and (ii) accommodate the parties' schedules in scheduling the hearing, which are discrete, specific promises. This is sufficient to support a breach of contract claim. Moreover, *nowhere* in Defendant's moving brief does Butler actually address these allegations, thereby waiving any argument that Plaintiff failed to adequately allege breach of contract based upon these terms. Butler's motion to dismiss could be denied on this basis alone.

The SMP promises that the Title IX Coordinator will provide parties with notice of the hearing 14 *business days* prior to the hearing date, yet Plaintiff did not receive timely notice under the Policy. Compl. ¶¶ 112-114. Similarly, with regard to the University's obligation to reasonably accommodate the parties' schedules, the University breached this provision by unilaterally setting

a hearing date (twice), cancelling one hearing at the very last minute, and never inquiring as to Plaintiff's schedule or availability in scheduling the first and third hearing dates. Compl. ¶¶ 95, 96, 114, 134, 135.  These are specific provisions that Butler breached, resulting in damages to Plaintiff, including direct, out of pocket losses and mental/emotional distress.  Moreover, at no point in time did Butler even pretend to provide an explanation for its failure to consult with Plaintiff concerning his availability for a hearing, constituting at least arbitrary and capricious conduct.  Butler's conduct is made particularly arbitrary by the fact that even *after* the first hearing was scheduled without consultation on a date that was impossible for Plaintiff to attend, Butler still failed to consult Plaintiff about his availability when rescheduling the hearing date for the third time.  Compl. ¶¶ 95, 114, 134.

Ignored by the Defendant's brief entirely, Plaintiff also points to Defendant's failure to provide the decision-maker with a copy of the Final Investigation Report, as is specifically required by the SMP.  Compl. ¶¶ 13, 112, 136.  Defendant also ignores Plaintiff's claim that the University failed to provide Plaintiff with an opportunity to question the investigator at the hearing. Compl. ¶ 137.  The investigator in the matter failed to appear at the hearing, and thus, Plaintiff was not given any opportunity to question the investigator, whose sloppy, overbroad, deficient investigation and report caused Plaintiff months of actual harm, including by way of costs for professional assistance, diminished time to devote to his actual education, and emotional distress. Compl. ¶ 152. Defendant's failure to address these allegations in its Moving Brief once again constitutes a waiver of any claim that these allegations fail to sufficiently state a breach of contract.

With regard to the University's failure to properly train its Residence Life staff, Plaintiff properly alleged that Butler's resident advisors helped to organize and plan the "mediation" in which Plaintiff was ambushed, bullied, and left traumatized, scared, and uncomfortable in his

living situation. Compl. ¶¶ 59-65, 141, 150(g). On information and belief, the lack of proper training directly resulted in, and contributed to, Plaintiff's exposure to bullying, harassment, and a hostile and unsafe living environment, contrary to Butler's policies.[1] Compl. ¶¶ 141, 150(g).

Next, with regard to Plaintiff's allegation that Butler failed to provide a fair and impartial/equitable process (Compl. ¶ 130), numerous courts have held that such promises are sufficiently specific to plead a breach of contract claim. *See, e.g., Doe v. Univ. of Scis.,* 961 F.3d 203, 213 (3d Cir. 2020); *Doe v. Univ. of Denver*, 2022 COA 57, ¶¶ 40-55, 516 P.3d 946, 956. Plaintiff's Complaint clearly delineates that the process that Butler engaged in, and the actions taken upon Plaintiff, were far from fair and equitable. As stated above, the University's failure and outright refusal to provide Plaintiff with meaningful access to the investigation materials rendered it nearly impossible for Plaintiff to evaluate the evidence being used against him. This is not a vague or ambiguous promise in the SMP. It is clear that the promise of a fair and impartial process includes the promise that the process will be conducted with adequate due process and without retaliatory or discriminatory practices. However, the University abused its discretion and acted arbitrarily by refusing to provide Plaintiff with adequate access to investigation materials and railroading him in a biased and one-sided investigation. Compl. ¶¶ 88, 130-133.

Further, with regard to Plaintiff's assertion that Butler did not complete the investigation in a timely manner, this again is not a vague promise. This promise necessarily includes the promise that the University will not unreasonably delay the investigation. However, the University did just that when it extended the investigation against Plaintiff to include irrelevant incidents made by students that did not, and never did, file a complaint against Plaintiff.

---

[1] The exact training, or lack thereof, is not readily available to the public, and is information that Plaintiff intends to seek in discovery.

Compl. ¶¶ 11, 88(a), 131.  As a result, the University engaged in unreasonable delay, which does not satisfy, under any definition, the requirement that the investigation be completed in a "timely manner." Moreover, given the lack of any meaningful explanation from Butler as to why the investigation dragged on for the better part of a year – especially considering that J.F.'s own interview statements at the outset precluded a finding of Stalking under the SMP – Plaintiff has adequately alleged, and the court can reasonably infer, that Butler acted arbitrarily and/or in bad faith in needlessly and without explanation prolonging the investigation for an extended period of time. Compl. ¶¶ 11, 88, 131.

With regard to Butler's failure to discipline B.P. for providing demonstrably false testimony during the investigation (Compl. ¶¶ 120,132), this again is a sufficiently specific provision in the SMP. The SMP states that parties must be truthful in participating in a University disciplinary proceeding and that students providing willfully provide false information may be subject to disciplinary action. Compl. ¶¶ 132.  Despite B.P.'s statements being inflammatory, harmful, and patently false, the University took no action against B.P., and did not even issue a warning. (Compl. ¶¶ 120,132).  At the very least, this is a bad-faith abuse of discretion, discriminatory, and arbitrary, given that the University chose to investigate a complaint against Plaintiff which did not remotely qualify as stalking under the SMP definition, yet used that same discretion to ignore B.P.'s blatant lies that directly, unequivocally violated a clear policy provision.

As demonstrated above, Plaintiff has sufficiently pleaded his breach of contract claim, identifying numerous express, specific, mandatory contract provisions and the manner in which Butler breached said provisions, damaging Plaintiff.  Defendant has failed to address numerous specific provisions of the SMP that Plaintiff alleged Butler breached in his Complaint, essentially

waiving any argument that such claims are insufficient to allege a breach of contract. Defendant's motion to dismiss the breach of contract claim should be denied.

### b)  Plaintiff Has Pled All Necessary Elements of a Breach of Contract Claim

Under Indiana law, it is well settled that to plead a breach of contract claim, a Plaintiff must allege "(1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach." *Neurology & Pain Mgmt. Assocs., P.C. v. Bunin*, No. 3:17-CV-035 JD, 2018 WL 3830059, at *2 (N.D. Ind. Aug. 13, 2018).

In claiming that Plaintiff must allege bad faith, Defendant relies heavily on *Amaya v. Brater*, 981 N.E.2d 1235, 1240 (Ind. Ct. App. 2013). However, this case is clearly distinguishable. *Amaya* involved a medical student who was accused of *academic* misconduct. The standards for academic misconduct and sexual misconduct are entirely different. *Non-academic* disciplinary proceedings require more stringent procedural protections because, unlike academic proceedings that involve qualitative evaluations of a student's performance, disciplinary proceedings "bear a reasonable resemblance to traditional judicial and administrative factfinding." *Allahverdi v. Regents of University of New Mexico*, 2006 WL 131380 at *14 (D.N.M. Apr. 25, 2006); *see also Neal*, 2017 WL 633045 at **24 ("Due process for disciplinary proceedings is more extensive than for academic decisions"); *Doe v. Univ. of Scis*., 961 F.3d at 213 ("The investigation and fair adjudication of alleged criminal activity like sexual assault is not uniquely within the province of colleges and universities."); *Doe v. Baum*, 903 F.3d 575, 582 (6th Cir. 2018) (accused "students have a substantial interest at stake when it comes to school disciplinary hearings for sexual

misconduct."). As such, courts are *not* required to apply the same level of deference to university non-academic disciplinary decisions as they do to academic disciplinary decisions.[2]

In addition to its inapplicability here due to the academic/non-academic distinction, the *Amaya* case was decided at the *summary judgment* stage, after a complete factual record was developed through discovery. This puts that case on entirely different footing, and calls for a different standard of review than a Rule 12(b)(6) motion to dismiss, where Plaintiff's allegations must be taken as true as pleaded. As such, *Amaya* does not control here. Defendant's reliance on *Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031 (7th Cir. 2021) is equally unavailing, as that case, too, dealt with an academic misconduct matter and was resolved at the summary judgment stage, not on the pleadings.

Furthermore, Defendant fails to appreciate that, even under *Amaya*, a plaintiff need not exclusively prove overt bad faith, but may satisfy the standard by showing merely arbitrary or capricious conduct, which Plaintiff has amply alleged here. As such, each requisite element of Plaintiff's breach of contract claim is adequately and plausibly alleged, and Defendant's Motion to Dismiss should be denied.

## III.    PLAINTIFF SUFFICIENTLY PLEADS UNJUST ENRICHMENT IN THE ALTERNATIVE

Defendant incorrectly claims that Plaintiff's unjust enrichment claim must be dismissed. Somewhat ironically, Defendant asserts that the reason Plaintiff cannot make out an unjust enrichment claim is because there is already a specific contract – even though Defendant devotes

---

[2] Defendant's Moving Brief heavily relies on inapposite cases discussing the standard for review of academic matters, not non-academic general discipline, as is the case at bar. *See* Defs.' Br. 12, 16-17 ("literal adherence to university rules will not be required when the process rests upon judgments *as to academic or professional standards*;", "disputes *within the academic community;*" "courts do not second-guess[] the professional judgment of University faculty *on academic matters*.").

much of its brief to arguing the exact opposite.  Plaintiff is entitled to plead in the alternative in the event that the Court finds that there is no existence of an enforceable contract between Plaintiff and the University. "A complaint need not use particular words to plead in the alternative, [but] must use a formulation from which it can be reasonably inferred that theories are intended as alternatives." *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1116 (S.D. Ind.), *on reconsideration in part, No. MDL NO. 1373*, 2001 WL 34691976 (S.D. Ind. Nov. 14, 2001), *and on reconsideration in part sub nom. In re Bridgestone/Firestone Inc. Tires Prod. Liab. Litig.*, 205 F.R.D. 503 (S.D. Ind. 2001), *rev'd in part sub nom. In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002) (citing *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000)).

Here, Plaintiff sufficiently pleads unjust enrichment in the alternative. Plaintiff alleges that he paid tuition and fees to attend the University, and was unable to receive the benefit of his education. Compl. ¶¶ 156-159.  Assuming, *arguendo*, the absence of a contract, the University received fees from Plaintiff in exchange for an education, and due to the University's arbitrary and capricious actions resulting in a hostile environment, Plaintiff was forced to leave the University for the Spring 2021 semester. Plaintiff thus was unable to receive the full benefit of the education and related services that he had paid for (such as room and board), and the University was unjustly enriched. In the event that this Court finds that there is no enforceable contract between Plaintiff and the University on the basis of the SMP, Defendant's motion should be denied with regard to Plaintiff's unjust enrichment claim.

## IV.   THERE IS NO BASIS TO DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE

To the extent this Court grants any part of Defendant's motion, Plaintiff requests that dismissal be without prejudice. First, as described above, Plaintiff's claims are adequately pleaded

and should not be dismissed at all. Second, dismissal with prejudice upon a *first* Complaint is nearly unheard of.

A court "should freely give leave [to amend pleadings] when justice so requires." Fed.R.Civ.P. 15(a)(2). The general rule is that "the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir.2004); *see also Franklin v. Civ. City of S. Bend*, No. 3:13-CV-207-TLS, 2013 WL 5308860, at *6 (N.D. Ind. Sept. 19, 2013). "District courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir.2008).

Although Plaintiff believes the Complaint is sufficient on its face, to the extent this Court is inclined to disagree, Plaintiff respectfully requests leave to file a motion to amend the complaint within a time certain after the court's decision on this motion to dismiss, with Plaintiff's proposed motion to include a draft proposed pleading in accordance with all relevant rules, and in which Plaintiff will specify what he would add in order to amend the Complaint consistent with the Court's decision. In sum, Defendant's motion should be denied in its entirety, but to the extent this court does dismiss any of Plaintiff's claims, such dismissal should be without prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Butler's Motion to Dismiss the Complaint should be denied. To the extent this court is inclined to dismiss any claims, Plaintiff respectfully requests such dismissal be without prejudice.

Dated:   New York, New York
         December 13, 2022

Respectfully submitted,

**NESENOFF & MILTENBERG, LLP**
*Attorneys for Plaintiff John Doe*

By: /s/ *Andrew T. Miltenberg, Esq.*

Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Kristen Mohr, Esq.
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
kmohr@nmllplaw.com