

September 15, 2023

Regina Federico
Litigation Counsel
Nesenoff & Miltenberg, LLP
101 Federal Street, 19th Floor
Boston, MA 02110
617-209-2188

**RE: *John Doe v Butler University - Case No. 1.22-cv-01828***

Dear Ms. Federico,

You have asked me to prepare opinions for the case John Doe v. Butler University. I was retained to assess and give my opinions on the Defendant's compliance in many areas including policies, practices, training, investigations, supervision, record keeping, remedy, the standard of care in educational institutions and other topics that might arise. I have been retained at an hourly rate of $400 per hour for my analysis and $3,200 for my testimony per day.

### A. Background

Attached to this opinion is a true and correct copy of my curriculum vitae (Exhibit "1"). I have been involved in research relating to sexual harassment in schools for 15 years. Because of my experience and scholarship, I am qualified to render an opinion in this case and set forth in this report.

My educational background is as follows: B.A. Economics, University of Virginia, Charlottesville (2007); M.Ed. Social Foundations of Education, University of Virginia, Charlottesville (2008); Ph.D. Educational Research, Statistics and Evaluation, University of Virginia, Charlottesville (2011).

I am the President of Grant Consulting, a research and evaluation company, dba McGrath Training Solutions, an educational company that provides training to help schools become safer, more effective learning environments. I have substantial experience in the design, administration, and analyses of randomized controlled trials and mixed-methods research and providing research and evaluation services for various clients primarily in the field of social sciences. McGrath Training Solutions specializes in the delivery of the McGrath Response System, which provides awareness and investigation training on sexual harassment, sexual misconduct, discrimination, bullying, and Title IX compliance.

I serve as a faculty member at Cal Poly State University, San Luis Obispo, and I have taught undergraduate and graduate courses on statistics, survey design, measurement theory, and qualitative and quantitative methods for the past 13 years.

I serve on the Board of Directors for S.E.S.A.M.E. (Stop Educator Sexual Abuse, Misconduct, and Exploitation). S.E.S.A.M.E. is the leading national voice for the prevention of sexual exploitation, abuse, and harassment of students by teachers and other school staff. Our organization works toward the following goals: (1) Insisting upon implementation of and adherence to child-centered educator sexual abuse policies, regulations and laws, (2) Directing attention to the maintenance of proper boundaries between school staff and students by promoting annual training, the adoption of professional standards and codes of ethics, (3) Increasing public awareness of educator sexual abuse by breaking the silence in a strong and united voice, (4) Fostering recovery of survivors through mutual support and access to information, and (5) Encouraging survivors of educator sexual abuse to report their offenders to local law enforcement officials and state education department credentialing offices.

I have conducted multiple IRB-approved studies on educator sexual abuse and have contributed numerous publications and presentations to the field including *Edweek*'s, "The Challenges of Keeping Sexual Predators Out of the Classroom"; *the Journal of Child Sexual Abuse*, "Sexual Abuse and Exploitation of PreK–12 Students by School Personnel"; and *Educational Administration Quarterly*, "Title IX and School Employee Sexual Misconduct: How K–12 Schools Respond in the Wake of an Incident." My dissertation focused on examining Virginia State and local-level educator sexual abuse policies and my study identified multiple loopholes, including the lack of supervision by school districts that allows sexual predators to remain in our school systems.

From 2016 to 2017, I was the Principal Investigator for a Federal Department of Justice School Safety study titled, "Sexual Misconduct by School Employees: Policy Implementation and Effectiveness." This two-year multi-centered study involved document collection, interviews, and focus groups with school employees and county officials directly and indirectly involved with incidents of school employee sexual misconduct across the U.S. The purpose of the study was to learn from school districts who have recently had incidents of school employee sexual misconduct in order to develop best practices for preventing and responding to sexual abuse with proper supervision and policies.

I have served as an advisor regarding sexual misconduct prevention and policy implementation for the Office for Civil Rights (OCR), the Department of Education, the Center for Disease Control, the Ontario College of Teachers, and others. I have been featured on various news outlets, for example, the *Wall Street Journal*, *Education Week*, the *Chicago Tribune*, *NPR* and *NewsNation*.

As set forth above, I have significant experience concerning the duty of care owed by schools to their students, as well as the role, both presently and historically, of schools and its administrators and employees in preventing and responding to the physical and/or sexual abuse of their students, and supervising their staff and students. I am therefore qualified to render opinions about Butler University as it relates to their conduct at issue in this matter.

### B. Methodology

In preparing this report and reaching the opinions set forth herein, I relied on and reviewed various materials, noted in Exhibit "2". In addition to these documents, I have also reviewed the Butler University website for any publicly available handbooks, policies or procedures, OCR Title IX guidance, and various research and publications about best practices and standards of care regarding the prevention of and response to harassment in schools.

**If additional depositions are completed and additional discovery is exchanged, I reserve the right to further supplement this report.**

### C. Basic Factual Overview

Doe, was an undergraduate male student at Butler University, from the fall of 2019 until the spring of 2023. He was a resident first of a fraternity house on campus, and then of Fairview House, a campus residence hall. Doe was part of a "friend group" which consisted of approximately 13 to 16 individuals during their freshman year, but had shrunk to approximately 10 to 13 individuals during his sophomore year. The friend group began complaining that Doe was "violating boundaries", and on March 3, 2021, the group participated in a mediation organized by the RA regarding expectations and to end the friendship.

Doe was upset and crying, met with the RA immediately after the meeting, and on two additional occasions to discuss the mediation. On March 9, 2021, Doe emailed the person in charge of housing at Butler, requesting an emergency room change. Doe wrote to Dean of Students, Martha Dwizlik, and stated, *"The living situation I am in is not doable. I feel like I am being unfairly persecuted and harassed and it is definitely a toxic environment"* (DEFT RESP_001598).

Butler University's Title IX Coordinator, Maria Hinton (Kanger), received a report from J.F., a female member of the friend group, and Butler University student, on March 04, 2021, stating that after speaking with one of her professors she was recommended to stop by the Title IX office. On March 9, 2021, Kanger, received a formal complaint via email from Complainant, J.F. In it, J.F. alleged that Doe tracked J.F.'s location via social media throughout the course of their friendship; watched from the window of their pod to see "when members of the pod would come and go"; went into her pod on multiple occasions without asking first; entered the "general area" of Complainant's pod on multiple occasions while she and her roommates were not present in the pod, "searching" for them; and entering Complainant's individual room "without [Complainant's] permission while [she] wasn't there" and using her bathroom (DEFT RESP_002312).

Butler University proceeded to conduct an investigation into the alleged complaint and opened an investigation into a violation of Butler's Sexual Misconduct Policy. A determination of findings was produced on October 29, 2021. The decision maker, Jodie Ferise, found that:

> *"There is no evidence that Respondent actively followed, monitored, or surveilled Complainant. At most, the evidence available to Decision Maker shows that Respondent may have at times overstayed his welcome in Complainant's pod or failed to read nonverbal cues that his friendship with the group was deteriorating. Respondent admitted to at times looking to see where his friends were, using either the publicly shared locations on Snapchat or identifiable locations in the photographs his friends, including Complainant, posted online. (PLTF000384)*
>
> *Because he considered these to be his friends, and because they were freely sharing location- specific information, Respondent's behaviors would not meet the usual definition of "follow", "monitor", or "surveille". The evidence presented showed that on multiple occasions, Respondent was in Complainant's pod, with the permission of Complainant and her roommates, and that at times they allowed him to remain in the room when they left or went to bed. While they may have been annoyed when his visits interfered with their study time, or frustrated by his lack of social boundaries, that does not equate to "following", "monitoring", or "surveilling" Complainant." (PLTF000384)*

### D. Summary of Opinions

Based on my review of the facts of this case, Butler University fell below the standard of care with regard to the following:

1. Butler University failed to properly screen J.F.'s complaint and inappropriately conducted an investigation of a policy violation under Butler's Sexual Misconduct Policy.
2. Butler University failed to follow a reasonably prompt timeframe for issuing notices and completing an investigation as established by Butler University's Sexual Misconduct Policy.
3. Butler University had notice of Doe being harassed by his friend group as early as March 3, 2021 yet took no steps to investigate or respond appropriately.
4. Butler University failed to train their staff and students about how to recognize harassment and their responsibilities for reporting.
5. Butler University failed to effectively train their investigators about how to conduct a prompt, thorough investigation.

The basis and facts supporting each of these opinions are described below.

**1. Butler University failed to properly screen J.F.'s complaint and inappropriately conducted an investigation of a policy violation under Butler's Sexual Misconduct Policy.**

As noted above, per Butler's Sexual Misconduct Policy, Stalking is defined as:

> "Stalking occurs when a person engages in a course of conduct <u>directed at a specific person</u> under circumstances that would cause a <u>reasonable person</u> to fear for the

> *person's safety or the safety of others or to experience substantial emotional distress. 1. "Course of conduct" means two or more acts, including but not limited to acts in which a person directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about another person, or interferes with another person's property. Substantial emotional distress means significant mental suffering or anguish."*

Butler's Sexual Misconduct Policy, also describes dismissal of a Formal Complaint as:

> *"a. A formal complaint may be dismissed at any time prior to the determination of outcome, based on the grounds outlined below.*
> *b. The Department of Education's Title IX regulations require that a formal complaint be dismissed as a Title IX matter under certain circumstances:*
> > *i. The conduct alleged, even if proven to have taken place, would not meet the regulations' definition of sexual harassment under 34 CFR § 106.30,*
> *c. While this policy is meant to satisfy Title IX compliance obligations, it also addresses alleged sexual misconduct that falls outside of the strict scope of Title IX.*
> > *i. Therefore, a formal complaint may be "dismissed" as a Title IX matter, but may still move forward under this policy.*
> > *ii. If the University determines that the formal complaint does not meet the requirements of the Title IX regulations but does fall under the jurisdiction of this policy, the Administrative Investigation and Adjudication Process will continue as outlined below. This decision will be documented in the case file.*

Butler failed to properly screen J.F.'s complaint, wrongly classifying it as a "Stalking" claim even though the allegations made by J.F., if true, would not constitute Stalking as defined by Butler's Sexual Misconduct Policy.

Specifically, in J.F.'s own interviews with the investigator, she:

- confirmed that her and her friend group had a long friendship with Doe, beginning in the fall of 2019;
- confirmed that her and her friend group of nine friends vacationed together, sharing her family's cabin with two-bedrooms and one-bathroom. All nine friends shared the one bathroom, taking turns as needed, with no one asking permission;
- confirmed that she had a single room with a door that could be locked from the outside, but that locking the door was inconvenient;
- confirmed that she "never claimed" that Plaintiff's conduct was specific to, or directed at her;
- confirmed that her own Snapchat location data was set to private/off, meaning Plaintiff could not have monitored her location;
- the alleged "Stalking" occurred via Snapchat Maps, was on an application that those friends had publicly shared with their friend group;
- acknowledged that her personal reaction to someone using her bathroom was not a standard, typical, or expected response (in her own words, "normally people wouldn't lose their shit about someone using their bathroom"); and

- admitted that she was not even sure whether Plaintiff was aware that she didn't like other people using her bathroom.
  (Ex 103 Final Investigation Report Appendix)

J.F.'s impact, outlined in the Notice of Allegations letter on March 11, 2021, claims she was "very distraught" and "had a really bad mental breakdown" because of Doe using her bathroom on February 26, 2021. As noted by the Complainant, she even says her reaction was atypical, inferring that she was not acting as a reasonable person would react when someone used their bathroom. A reasonable person would not "fear for the person's safety or the safety of others" nor experience "significant mental suffering of anguish" based on what was reported to the Title IX Coordinator. As noted by the Jodie Ferise, decision maker, *"Complainant herself acknowledged that she was already unsettled by knocks at the door and that she had developed fear and anxiety following criminal break-ins at her family cabin. Those break-ins had nothing to do with conduct on the part of Respondent"* (PLTF000384).

Per the notice of allegations letter delivered to Doe on March 11, 2021 by Maria Kanger, *"The University has received a report alleging that you have engaged in behavior that could constitute a violation of the Sexual Misconduct Policy ("Policy")."* (Ex 141 Notice of Allegations dated March 11, 2021; DEFT RESP_002312). The letter goes on to further state that "This alleged conduct could constitute violations of the following provisions of the Policy: Stalking" (DEFT RESP_002313). Kanger also attaches the Sexual Misconduct Policy to the letter.

However, when questioned about the improper application, Maria Kanger noted in an email on March 31, 2021, that *"With regard to the applicability of the Sexual Misconduct Policy, as I have shared previously, this policy covers matters that do not fall under the Title IX definition of sexual harassment. We have chosen to use the same policy and process for Title IX matters and matters that fall outside the scope of Title IX, including matters that fall under the Clery Act"* (Ex. 111 - Email Re formal complaint; DEFT RESP_001590). However, the policy does not include two separate definitions for stalking (i.e. Title IX and non-Title IX). There is only one definition of stalking listed in the policy. Further the entire sexual misconduct policy is based on "sex discrimination" and "sexual misconduct". J.F.'s complaint was not based on "sex" in any way - it is a conflict between two individuals.

While I agree that J.F.'s complaint must be appropriately handled and investigated under Butler's Campus Life Harassment Policy, the complaint either met the definition of stalking listed in the Sexual Misconduct Policy, or did not. Further Doe was either being investigated for a violation for Stalking or was not. Maria Kanger's, the Title IX Coordinator, original notice of allegations email from March 11, 2021, claims the complaint is an alleged violation of the Sexual Misconduct Policy, but then on March 31, 2021 states that the complaint does not meet the definition of stalking under Title IX, but are still proceeding regardless with an investigation under the Sexual Misconduct Policy.

Thus, Butler University identified the wrong policy violation in their notice of allegations letter on March 11, 2021. By inappropriately categorizing the behavior as a violation of the "Sexual Misconduct Policy", it resulted in an unnecessarily lengthy investigation and decision making process.

**2. Butler University failed to follow a reasonably prompt timeframe for issuing notices and completing an investigation as established by Butler University's Sexual Misconduct Policy.**

Per Butler's Sexual Misconduct Policy,

*"If the process moves forward with a formal complaint, each party will receive a Notice of Allegations."*

*"The University aims to complete all investigations in a reasonably prompt manner. The information-gathering phase of the investigation will be completed within sixty (60) business days."*

*Preliminary Report Review: "Each party will have the opportunity to submit a response to the Report within ten (10) business days."*

*Final Investigation report: "Complainant, Respondent, and their respective advisors will each be provided with the Final Investigation Report at least ten (10) business days prior to the hearing."*

*Referral to Hearing: "The Title IX Coordinator will send notice of the date, time, and location of the hearing, as well as the name(s) of the decision-maker(s) to the parties at least fourteen (14) business days prior to the hearing date."*

The timeline of the complaint and investigation activities includes:

- On Tuesday, March 9, 2021, Butler University (Butler) Title IX Coordinator, Maria Kanger, received a formal complaint via email from Complainant, J.F.
- On March 10, 2021, Plaintiff Doe received an email from Butler's then-Title IX Coordinator, Maria Kanger to set up a meeting with Doe.
- On Thursday, March 11, 2021, Coordinator Kanger met with Doe and sent a formal Notice of Allegations, via email, to both parties.
- On March 30, 2021, the complaint was referred to investigator Kody Rother.
- On April 15, 2021, Investigator Kody Rother, first met with Respondent.
- On June 24, 2021, a Preliminary Investigation Report was provided to both Complainant and Respondent (Doe).
- On August 2, 2021, the Final Investigation Report was provided to both Complainant and
- Respondent (Doe).
- A hearing was originally scheduled for September 2, 2021.
- On October 1, 2021, the parties and their advisors were notified that a new hearing date had been set for October 13, 2021.
- On October 13, 2021 the hearing took place.
- On October 29, 2021, a written determination of findings was issued, finding Doe not responsible for Stalking under Butler's Sexual Misconduct Policy.

As noted above, *"The University aims to complete all investigations in a reasonably prompt manner. The information-gathering phase of the investigation will be completed within sixty (60) business days."* Georgia Hensley, Director of Institutional Equity and Title IX coordinator at Butler University, and previously the Title IX Coordinator, testified that that the notice should have been sent promptly, and *"as a matter of practice, I expect it to be sent nearly same day, if not same day"* (Hensley transcript, p 16:10-11) and *"It's meant to be done very promptly so that the investigation can begin promptly"* (Hensley transcript, p 16:20-22). In this case, the notice of allegation provided to Doe was sent two days after Butler University received the formal complaint. Per the timeline above, Doe was not interviewed until April 15, 2021, 27 business days after receipt of the formal complaint. The preliminary investigation report was sent out to both parties on June 24, 2021, 76 business days after the initial complaint, and 16 business days after the timeline established in the Butler Sexual Misconduct Policy. Thus, Butler University did not complete the investigation in a "reasonably prompt" timeframe.

A *"Hearing in the matter was originally scheduled for September 2, 2021. On the morning of the hearing, September 2, 2021, both parties and their advisors, as well as Decision Maker Ferise, were notified that Investigator Rother had resigned from Butler University, effective immediately. As a result, the hearing was postponed. After exploring the options for proceeding after Rother's departure, Butler determined that that matter would move forward to hearing and that Decision Maker Ferise would not consider Rother's Final Investigation Report in determining responsibility."* (PLTF000378)

Thus, Butler did not follow the process outlined in the Sexual Misconduct Policy and the investigation report which had been developed and reviewed by both the complainant and respondent would not be used. Butler's action for conducting the hearing violated their own Administrative Investigation and Adjudication process.

The parties and their advisors were notified on October 1, 2021, that a new hearing date had been set for October 13, 2021, only 9 business days prior to the hearing date. Butler University did not follow their notice requirements for the hearing, which states *"The Title IX Coordinator will send notice of the date, time, and location of the hearing, as well as the name(s) of the decision-maker(s) to the parties at least fourteen (14) business days prior to the hearing date"* (Sexual Misconduct Policy; DEFT RESP_002301).

A determination of findings was finally issued on October 29, 2021, more than 7 months after the initial filed complaint (Determination Report PLTF000376-385). As noted above, the report found that there was no evidence that Doe violated Butler's Sexual Misconduct Policy. In sum, Butler University failed to follow a reasonably prompt timeframe for issuing investigation reports, notices, and completing the investigation established by Butler University's Sexual Misconduct Policy.

   3. **Butler University had notice of Doe being harassed by his friend group as early as March 3, 2021 yet took no steps to investigate or respond appropriately.**

School staff, including third parties, are responsible for reporting any inappropriate behavior or policy violations to the administration so concerns and complaints are investigated by the

appropriate personnel, properly recorded to assist with identifying patterns of behavior, and remedied to prevent further harm to students.

As described above the RA, Tarryn Harris, had notice of the conflict between the parties during the mediation on March 3, 2021. A "large group" of more than 5 students were present at the mediation (Harris transcript, p 33) and Harris was worried that Doe would feel "ganged up on" (March 2, 2021 email to King; PLTF000322). In a summary email of the mediation on March 4, 2021 from the RA to Elizabeth King, Assistant Community Director, and Shannon Mulqueen, the RA notes, *"throughout the whole segment of the mediation, Doe became very emotional and was super apologetic."* (PLTF000183-186). The RA referred Doe to counseling. No additional steps were taken by the RA or by Elizabeth King to reach out to Doe or report the behavior.

Plaintiff met and communicated with the RA after the mediation and again the following days. The RA, Tarryn Harris, said he was very "upset" and expressed that "the friend group was trying to separate from him" (Harris transcript, p 38:14-16). No concerns were reported to the administration despite the impact on Doe.

On March 9, 2021, Doe's mother, became aware of threats being made by B.P. against Doe, with B.P. claiming she had made repeated reports about Doe to the Dean of Students and Campus Safety. Doe's mother and Doe contacted Dean of Students Martha Dziwlik, by phone and email, and Director of Residence Life Bridget Bucey via email, to inform them of the dire situation for Doe. Doe wrote to them: *"I feel like I am being unfairly persecuted and harassed and it is definitely a toxic environment."* Martha replied via email suggesting a meeting, to which Doe replied "I would love to meet. When is good for you?" Martha never replied back to Doe's request (DEFT RESP_001592).

On March 9, 2021, Doe had documented the difficulties he was facing in emails throughout the day to at least three administrators and four professors.

On March 10, 2021, Doe received an email from Maria Kanger stating that Dean Dziwlik and Ms. Bucey were dealing with an emergency and that she "would be happy to talk with [Doe] about what he had discussed with Martha and Bridget." During the meeting Maria told Sue and Doe that rather than assisting Doe with his concerns, a Title IX complaint had been filed against him and that he was being investigated (DEFT RESP_001592).

Kody Rother was assigned to be the investigator and contacted Doe on April 15, 2021. Throughout the investigation, Kody said that Doe did express that he was sad, felt targeted, and that the group was "conspiring against" Doe. Rother said his job was to just to investigate and gather the facts (Rother transcript, pp 86-87).

The above incidents served as notice to Butler University about the harassment and impact to Doe and should have been immediately stopped, reported, investigated, and remedied. However Butler University staff did not report Doe's concerns and took no steps to investigate the harassment of Doe or to remedy the environment. Thus despite notice of the harassment against Doe and the impact it was having, the University focused on the Title IX investigation filed on behalf of J.F. and did not address the impact or harassment of Doe.

### 4. It is unclear if Butler University trained their staff and students about how to recognize harassment and their responsibilities for reporting.

Having policies prohibiting harassment is not enough. Per Butler University policies and state and federal laws, Universities are required to train their employees to be in compliance with their policies and understand how to identify harassment and how and whom to make a report to. Harassment trainings are important to help ensure school employees understand what harassment looks like, understand the grievance process, and know how to make a report. Staff and third parties not adequately trained on University policies or how to recognize and report incidents, are ill-equipped to identify these behaviors and make a report to administration.

Martha Dziwlik testified that all RAs were required to go to a 5-to-7 day training at the beginning of the year and again in January (Dziwlik transcript, p 50), and believes it covered Title IX (Dziwlik transcript, p 15) but no specifics about the training were provided. RA Tarryn Harris said she received training on Title IX, sexual misconduct, harassment and bullying (Harris transcript, pp 18-24). Harris testified that if she witnessed behavior that implicated some alleged or potential violation of the policy, she would have reported it to a higher entity.

These staff trainings may not have been memorable or effective, because the RA, the Dean, the Coordinator, and the investigator did not respond when Doe expressed that *"I feel like I am being unfairly persecuted and harassed and it is definitely a toxic environment."* As noted above, each of these individuals were made aware of the harassment of Doe and the impact it had on him. If effectively trained they would have taken steps to report the concerns to administration, which in turn would have taken steps to investigate the harassment and remedy the environment.

At the time of this report, no additional evidence was provided regarding staff trainings such as what information was covered, how long the trainings were, and who was in attendance. If staff are not trained, or not adequately trained on how to recognize and report harassment, they are ill-equipped to make a report.

Maria Kanger said that her responsibility was to provide prevention training and resources to fraternity, sororities, and the athletics community. However, in a performance improvement plan from early 2022, it was noted that this was an area of improvement suggesting that it had not previously been completed (Kanger transcript, pp 18-20)

At the time of this report, no evidence was provided that students were trained on how to recognize harassment and how and whom to make a report to. At the time of this report, no evidence was provided regarding student training such as what information was covered, how long the trainings were, and who was in attendance. If students are not adequately trained on how to recognize and report harassment, they are ill-equipped to make a report.

Training employees and students about what harassment is, how to recognize it, and how to make a report is essential to providing a safe school environment. Effective training programs send a clear message to staff and students that a harassment policy must be taken seriously and that harassment will not be tolerated.

### 5. Butler University failed to effectively train their investigators about how to conduct a prompt, thorough investigation.

Title IX regulations require coordinators and investigators to be trained on how to conduct an investigation and the grievance process (see 106.45 (b)(1)(iii)). At the time of this report, it is unclear if Butler University employees who conducted the initial investigation into the March 9, 2021 complaint were effectively trained. Training on how to conduct an investigation and the grievance process is required because administrators, who have expertise in education, typically do not have expertise in conducting thorough investigations. For example, they may not know what questions to ask, how to conduct a thorough interview, what documents to collect, their responsibilities for providing notice, time requirements, addressing bias or conflicts of interest, and more.

Three Butler University employees testified that they received Title IX training including:
- Maria Kanger stated that she went to an Association of Title IX Administrators (ATIXA) training, usually every other year, and that she attended the Title IX Coordinator Level one training in January of 2019 and took the Level Two Coordinator training in 2020 or 2021 (Kanger transcript, pp 56-57).
- Per Martha Dziwlik, she went to the Level 1, 2 and 3 ATIXA trainings (Dziwlik transcript, pp 10-11).
- Per Kody Rother, he recalled attending a training with ATIXA - a Level 1 Investigator course (Rother transcript, p 29).

Georgia Hensley, Director of Institutional Equity and Title IX coordinator at Butler University, and previously the Title IX Coordinator, testified that she did not participate in any trainings when she took over as the coordinator and did not attend any trainings in 2020 or 2021 or before July of 2022 (Hensley transcript, pp 9-11)

While Maria Kanger (Coordinator) and Kody Rother (Investigator) stated that they received training, the training was not effective in part due to the failure to apply the definition of Title IX appropriately (see No. 1) and the failure to conduct a prompt investigation (See No. 2).

Kanger was not effectively trained on how to conduct a Title IX investigation as she was unclear about the applicability of the Sexual Misconduct policy (See No. 1). Kody was not effectively trained on how to conduct a Title IX investigation, as evidenced by he was not in compliance with notice and investigation timeline requirements (See No. 2). Failure to properly investigate and document cases by a trained coordinator and investigator can limit the ability of administrators to recognize patterns in behaviors and provide a safe environment for all students.

Maria Kanger, the Title IX Coordinator at Butler University until May 2022, said she was put on a performance improvement plan which included correcting the definition of sex and gender-based discrimination which had been previously omitted from the policy, among other requests to connect with fraternity and sorority communities and the athletics community, and conduct

prevention programming. Kanger testified that she was given the opportunity to resign in May of 2022 due to "ongoing concerns about my performance" (Kanger transcript, pp 8-9).

As noted above, a trained coordinator and investigator are required. However, Butler University failed to effectively train their investigators about how to conduct a prompt, thorough investigation.

### E. Summary

Based on a review of the evidence provided, I confirm that Butler University's numerous and overwhelming failures to comply with Title IX and its own policies turned a blind eye to the safety and welfare of its students.

It is my opinion, to a reasonable degree of professional certainty, that each of the above described actions (1-5) were deviations and departures from Butler University's standard of care. As testified by John Doe, he has suffered emotionally in addition to effects to his living arrangements, loss of room and board, friendships, investigation costs, and attorney's fees (See Doe Deposition pp 73, 103-105; 108, 110-115; Final Investigation Report & Appendix).

All of my opinions are stated to a reasonable degree of professional certainty. I reserve the right to amend or supplement my opinions based on any newly discovered or additional information.

*[signature]*

Billie-Jo Grant, Ph.D.
1015 Temettate Ridge Ln.
Nipomo, CA 93444


Enclosures
	Exhibit 1: CV

**Exhibit 2: List of Materials Reviewed**

1. Depositions
    a. Dziwlik, Martha.pdf-Conds.pdf
    b. Harris, Tarryn.pdf-Original
    c. Hensley, Georgia.pdf-Original
    d. Kanger, Maria.pdf-Conds.
    e. dp082323-KodyRother.pdf
    f. Plaintiff Doe's Deposition
2. ECF No. 1 - Allen - Complaint
3. ECF No. 59 - Allen - Statement of Claims
4. Ex. 100- NOI Letter to Doe 03.11.21 re allegations by JF
5. Ex. 101 - Key Participants chart
6. Ex. 102 - Final Investigation Report
7. Ex. 103 - Final Investigative Report Appendix
8. Ex. 104 - Final Investigation Report Packet of Information Directly Related
9. Ex. 105 - Final Investigation Report List of Info Not Directly Related
10. Ex. 106- Doe Response to Preliminary Investigation Report
11. Ex. 107 - Doe Response to Final Investigative Report
12. Ex. 108 - SMP revised August 14, 2020
13. Ex. 109 - SMP Revised December 18, 2020
14. Ex. 110 - Email RE redactions and download
15. Ex. 111- Email Re formal Complaint
16. Ex. 112 - 04.02.21 Notes RE Zoom meeting
17. Ex. 113 - EM RE options for changing housing
18. Ex. 114 - Student Handbook Butler University
19. Ex. 116 - Housing Rates 2019-2023
20. Ex. 117 - Meal Plan Rates 2019-2023
21. Ex. 118 - Doe's Student Account Activity Fall 2019 through Sprin 2023
22. Ex. 119 - Learning Outcomes SOG Training
23. Ex. 120 - New Hire Orientation  -  Final
24. Ex. 121 - Professional Mentor Training 2020
25. Ex. 122 - Quiz--Boundaries and SM Module for Peer Mentors
26. Ex. 123 - Quiz--Responding to a Disclosure of SM for SOGs
27. Ex. 124 - SOG Sexual Misconduct Training 2020 Assessment
28. Ex. 125 - SOG Training 2020
29. Ex. 126 - SOG Training 2021
30. Ex. 127 - Coordinator Level 1 Master Slides 7.2021 FINAL
31. Ex. 128 - Cozen-OConnor-Training-Slides
32. Ex. 129 - Boundaries and Sexual Misconduct Peer Mentor Training Assessment (2021)

33. Ex. 130 - Butler University's Insurance Policy
34. Ex. 131 - Doe Student Record as of 6.23.23
35. Ex. 132 - Communications regarding Housing
36. Ex. 133 - Butler Bulletin 2020-2021
37. Ex. 134 - Butler Bulletin 2021-2022
38. Ex. 135 - Tuition and Fees 2019-2020
39. Ex. 136 - Tuition and Fees 2020-2021
40. Ex. 137 - Tuition and Fees 2021-2022
41. Ex. 138 - Tuition and Fees 2022-2023
42. Ex. 139 - Communications Re Canceled hearing
43. Ex. 140 - Sexual Misconduct Policy Revised February 2 2021
44. Ex. 141 - Notice of Allegations (to Doe)
45. PLTF000001-000118
46. PLTF000119-000129
47. PLTF000130-000366
48. PLTF000367
49. PLTF000368
50. PLTF000369-000370_Redacted
51. PLTF000371_Redacted
52. PLTF000372-000375_Redacted
53. PLTF000376-385
54. PLTF000386-000387_Redacted
55. PLTF000388
56. PLTF000389-000390
57. PLTF000391
58. PLTF000392-000396
59. PLTF000397
60. PLTF000398-000426
61. PLTF000427-000452
62. PLTF000453-000475
63. PLTF000476-000490

**Exhibit 3: List of Cases**

A list of all cases in which deponent has testified, either in deposition or in trial, as an expert witness during the previous four years.
1. John Doe v Rockingham County School Board, et al.
2. Jane Doe v Coronado Unified School District and Jordan Bucklew et al.
3. I.A. vs. Alameda USD, et al.
4. Jane Doe v Special Education District of Lake County, Sharon Hefler, Beverly Wolfe, and Israel Suaste-Gonzalez
5. John Doe vs. Richland School District Two
6. Asatrian v Bergen Catholic at als